IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

**GLEN HAWKINS and ROBBIE BLACKMON**                                        **PLAINTIFFS**

V.                                          CASE NO. 5:13-CV-5224

**VANTAGE POINT BEHAVIORAL HEALTH, LLC and
ACADIA HEALTHCARE COMPANY, INC.**                                          **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Currently before the Court are Defendants' Motion for Summary Judgment (Doc. 17) and supporting documents (Docs. 18, 19); Plaintiffs' Response (Doc. 21) and Statement of Facts (Doc. 22); and Defendants' Reply (Doc. 25). Also before the Court are Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 23), and Defendants' Response (Doc. 26); Plaintiffs' Motion for Leave to File Amended Statement of Facts (Doc. 27), and Defendants' Response (Doc. 28); Plaintiffs' Motion in Limine (Doc. 34), and Defendants' Response (Doc. 35); Defendants' Motion in Limine (Doc. 32), and Plaintiffs' Response (Doc. 37); Defendants' Motion for Twelve Person Jury (Doc. 38) and Brief in Support (Doc. 39), and Plaintiffs' Response (Doc. 41); and Defendants' Motion to Take Deposition from Delores Franklin (Doc. 40) and Plaintiffs' Response (Doc. 42).

The Court held a hearing on these motions on December 2, 2014, and after hearing oral argument made the following rulings from the bench: Plaintiffs' Motion for Leave to File Amended Complaint and Plaintiffs' Motion for Leave to File Amended Statement of Facts were **DENIED**; Defendants' Motion for Summary Judgment was **GRANTED**; and Plaintiffs' and Defendants' Motions in Limine, Defendants' Motion for Twelve Person Jury, and Defendants' Motion to Take Deposition from Delores Franklin were all **DENIED** as

1

**MOOT**. This Opinion and Order explains the basis for the Court's decision. To the extent anything in this Order differs from what the Court stated from the bench, this Order will control.

## I. PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED COMPLAINT

The Second Amended Case Management Order (Doc. 16) instructs the parties that "[l]eave to amend pleadings and/or to add or substitute parties shall be sought no later than **AUGUST 29, 2014**." *Id.* at § 3 (emphasis in original). It states furthermore that "[t]he deadlines set forth above are firm. Extensions and/or continuances will not be considered absent very compelling circumstances." *Id.* at § 14. Nevertheless, on October 8, 2014, Plaintiffs moved for leave to file an amended complaint in order to clarify the basis for their argument that Defendant Acadia Healthcare Company should be held liable. (Doc. 23, ¶ 3). Plaintiffs argue that this would be necessary in the event that "Defendants later complain that the Complaint did not adequately plead the basis for holding Acadia liable," and that "[i]t would be unjust to dismiss Acadia on the basis of a technicality in pleading when it may be cured without prejudice to any party." *Id.*

Plaintiffs' concerns might constitute "very compelling circumstances" if, for example, Defendants had moved for judgment on the pleadings under Fed. R. Civ. P. 12(c). However, since Defendants have moved for summary judgment under Fed. R. Civ. P. 56, the Court's review of the facts at this stage is based primarily on the evidence in the record and on the parties' statements of facts rather than on the pleadings. Given this procedural posture, an extension of the deadline to amend pleadings is not warranted. Therefore, Plaintiffs' Motion for Leave to File Amended Complaint is **DENIED**.

## II. PLAINTIFFS' MOTION FOR LEAVE TO FILE AMENDED STATEMENT OF FACTS

At summary judgment proceedings, the Local Rules merely require the non-moving party to controvert a fact set forth in the moving party's statement of facts in order to avoid having that fact deemed admitted. Local Rule 56.1(c) ("All material facts set forth in the statement filed by the moving party . . . shall be deemed admitted unless controverted by the statement filed by the non-moving party . . . ."). In their original Statement of Facts, Plaintiffs controverted the facts set forth in paragraphs 2-5, 9, 11-12, 14-15, 17-26, 28-29, 32-33, 36-42, 44-50, 53, 57, 59-60, 62-64, 66, 68, 70-71, 73-74, 76-78, 80, and 83 of Defendants' Statement of Facts. See Doc. 22, ¶ 1 ("Plaintiffs dispute . . . all or a part of the allegations contained in the following paragraphs of Defendants' Statement of Material Facts . . ."); see also BLACK'S LAW DICTIONARY 379 (9th ed. 2009) (defining "controvert" as "[t]o dispute or contest; esp., to deny (as an allegation in a pleading) or oppose in argument").

Plaintiffs filed their Motion for Leave to File Amended Statement of Facts "to avoid the injustice that would occur if Defendants' Statement of Facts were deemed admitted," as Plaintiffs' Statement of Facts did not cite to specific evidence in the record or discuss the basis for disputing particular paragraphs in Defendants' Statement of Facts. (Doc. 27, ¶ 12). Although the Court certainly finds it helpful when non-moving parties' statements of facts explain in detail why certain facts are controverted, the Local Rules do not require any such elaboration. In light of this holding, no cause exists for Plaintiffs to be granted leave to amend their Statement of Facts. Therefore, Plaintiffs' Motion for Leave to File Amended Statement of Facts is **DENIED**. However, Plaintiffs did not dispute, and clearly did not intend to dispute, the facts set forth in paragraphs 1, 6-8, 10,

13, 16, 27, 30, 31, 34, 35, 43, 51, 52, 54-56, 58, 61, 65, 67, 69, 72, 75, 79, and 81-82 of Defendants' Statement of Facts. Accordingly, the facts articulated in those paragraphs are deemed admitted under Local Rule 56.1(c).

### III. DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. BACKGROUND

Plaintiffs Glenn Hawkins and Robbie Blackmon worked for several years at Vantage Point, an in-patient psychiatric hospital in Fayetteville, Arkansas, until their resignation on September 4, 2013.[1] Vantage Point provides services to patients in different units, including Children, Adults, Geriatric (also called "Geri Psych"), Adolescent Acute (also called "North Unit"), and Adolescent Sub-Acute (also called "South Unit"). Each unit is staffed with nurses and psychiatric technicians (also called "psych techs"). Vantage Point operates 24 hours a day, every day of the year.

Hawkins and Blackmon are both African-American males who were employed as psych techs at Vantage Point. Hawkins and Blackmon usually worked in the Adolescent Sub-Acute unit, but they occasionally also worked in other units. The major function of psych techs at Vantage Point is to ensure that the patients, who suffer from various mental and behavioral problems, do not harm themselves or others.

On January 15, 2012, while Hawkins and Blackmon were transporting a patient from one unit to another unit the patient became violent. Hawkins and Blackmon attempted to restrain the patient, who fell and hit his head at some point during the struggle. While the struggle between the Plaintiffs and the patient was ongoing, day shift

---

[1] This hospital was formerly called "Vista Health," but for simplicity it is referred to as "Vantage Point" throughout this Order.

supervising nurse Elisa Bowlet came around the corner of the hall and saw the latter part of these events. Night shift supervising nurse Lawanna Ireland also came upon these events around the same time as Bowlet and also witnessed the end of what transpired. On January 20, 2012, Hawkins was suspended for a week without pay as a result of these events. The disciplinary form pertaining to Hawkins's suspension stated that he had been insubordinate with a nursing supervisor by refusing to follow her instructions to "stop until the patient could walk on their own." (Doc. 17-7, p. 2).

On February 7, 2012, Hawkins and Blackmon both filed charges of discrimination with the Equal Employment Opportunity Commission (EEOC) against Vantage Point. Hawkins alleged in his charge that he was suspended because of his race. Blackmon alleged in his charge that he was subjected to a racial comment during the events of January 15, 2012, and that since that time he had been moved to different areas while similarly situated white employees were not being moved to different areas. On September 24, 2012, the EEOC issued a Dismissal and Notice of Rights for each of Hawkins's and Blackmon's charges, stating that it was unable to conclude that the information obtained in its investigation established violations of law.

On July 2, 2013, Hawkins and Blackmon both filed new charges of discrimination with the EEOC against Vantage Point. This time, both Plaintiffs complained in their charges that in late June 2013 they were instructed to continuously walk the halls during their shift to check on patients, and that they were threatened that they would be written up if they failed to do so. Hawkins alleged that this constituted race discrimination and retaliation for having filed a previous EEOC charge. Blackmon alleged that this constituted retaliation for having filed a previous EEOC charge, but did not allege that this

constituted race discrimination. Only six days later, on July 8, 2013, the EEOC issued a Dismissal and Notice of Rights for each of Hawkins's and Blackmon's charges, stating again that it was unable to conclude that the information obtained in its investigation established violations of law.

On September 4, 2013, Hawkins and Blackmon both resigned from their employment at Vantage Point. On October 4, 2013, they initiated this lawsuit by filing a Complaint in this Court, alleging that Defendants unlawfully subjected them to race discrimination, retaliation, a hostile work environment, and constructive discharge. Defendants have moved for summary judgment on all counts.

### B. LEGAL STANDARD

When a motion for summary judgment is filed, the Court must "grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The Court must review the facts in the light most favorable to the non-moving party and give that party the benefit of any inferences that can be drawn logically from those facts. *Canada v. Union Elec. Co.*, 135 F.3d 1211, 1212-13 (8th Cir. 1998). The moving party has the burden of proving that there are no material factual disputes. Fed. R. Civ. P. 56(c); *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986); *Nat'l Bank of Commerce of El Dorado, Ark. v. Dow Chem. Co.*, 165 F.3d 602 (8th Cir. 1999).

Once the moving party has met this burden, then the non-moving party must present "specific facts showing that there is a genuine issue for trial" in order to avoid summary judgment. Fed. R. Civ. P. 56(c). To accomplish this task, the non-moving party must produce evidence "such that a reasonable jury could return a verdict for the

nonmoving party." *Allison v. Flexway Trucking, Inc.*, 28 F.3d 64, 66 (8th Cir. 1994) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). "The nonmoving party must do more than rely on allegations or denials in the pleadings, and the court should grant summary judgment if any essential element of the prima facie case is not supported by specific facts sufficient to raise a genuine issue for trial." *Register v. Honeywell Fed. Mfg. & Techs., LLC*, 397 F.3d 1130, 1136 (8th Cir. 2005) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986)).

Finally, with regard to the substantive law examined *infra* in this Opinion and Order, Title VII claims and Arkansas Civil Rights Act claims "are governed by the same standards." *McCullough v. Univ. of Ark. for Med. Scis.*, 559 F.3d 855, 860 (8th Cir. 2009).

## C. DISCUSSION

### 1. Hostile Work Environment Claims

To establish a prima facie case for a hostile work environment claim, a plaintiff "must show that (1) he belongs to a protected group; (2) he was subject to unwelcome harassment; (3) a causal nexus exists between the harassment and the protected group status; (4) the harassment affected a term, condition, or privilege of employment; and (5) his employer knew or should have known of the harassment and failed to take proper action." *Sallis v. Univ. of Minn.*, 408 F.3d 470, 476 (8th Cir. 2005). The work environment must be both objectively hostile to a reasonable person in the employee's position and subjectively perceived as hostile to the actual employee. *Id.* This Court must "consider all of the attendant circumstances, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating or a mere offensive utterance, and whether it unreasonably interferes with an employee's work performance."

*Elmahdi v. Marriott Hotel Servs., Inc.*, 339 F.3d 645, 653 (8th Cir. 2003) (analyzing § 1981 and Title VII hostile work environment claims under same standard). "[M]ere utterance of an epithet which engenders offensive feelings in a[n] employee does not sufficiently affect the conditions of employment to implicate Title VII." *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993) (internal quotation marks, ellipses, and citation omitted).

Here, even viewing the facts in the light most favorable to Plaintiffs, they do not rise to the level that would constitute a hostile work environment under Title VII. Plaintiffs allege that on January 15, 2012, during the incident with the violent patient who was being transported to a different unit, Bowlett said the words "[t]hese fucking niggers." (Doc. 17-2, p. 11). Plaintiffs also allege that "on a regular basis" and "on numerous occasions," their supervising night shift nurse, Debbie Davidian, made various racially offensive comments to them, including that she referred to them as "[b]oys," that she "knew [they] must love fried chicken and watermelon," and making remarks about their "thick, black hair." *See, e.g.*, Doc. 21-1, ¶ 24; Doc. 21-2, ¶¶ 22, 23.

While such racial insults are deplorable and offensive, they do not rise to the level necessary to create an actionable hostile work environment claim under Title VII. In *Elmahdi*, the plaintiff's supervisor called him "boy" and "black boy," and remarked to the plaintiff that Africans have big penises. 339 F.3d at 650, 653. The Eighth Circuit noted that these statements were "offensive" but held that they were insufficient to support a race-based hostile work claim. *Id.* at 653.

In *Johnson v. Bunny Bread Co.*, the plaintiffs and other corroborating witnesses testified that "their supervisors and fellow employees often referred to them as niggers," while other witnesses disputed those allegations. 646 F.2d 1250, 1257 (8th Cir. 1981).

8

Nevertheless, the Eighth Circuit concluded in *Johnson* that "the racial slurs, if any, used at Bunny Bread did not violate Title VII." *Id.* The Eighth Circuit elaborated that "[s]uch racial slurs as were present at Bunny Bread were largely the result of individual attitudes and relationships which, while certainly not to be condoned, simply do not amount to violations of Title VII." *Id.* That last finding is especially significant here, because Plaintiffs contend that Davidian, whom they allege made the vast bulk of the offensive comments, later apologized to them "for having used racial slurs and teasing about fried chicken and such, and said that was not right but that she had 'just been raised that way' but she was trying to fix that." (Doc. 21-1, ¶ 25; Doc. 21-2, ¶ 24). The racial insults and surrounding circumstances that were held in *Elmahdi* and *Johnson* not to create hostile work environments seem to this Court to be at least as objectively hostile as those alleged by Plaintiffs in the instant case. If these insults did not rise to a legally actionable level in *Elmahdi* and *Johnson*, then they are not legally actionable here.[2]

Plaintiffs also contend that a hostile work environment was created for them by the imposition of certain job duties or prohibitions, such as the requirements that they walk the halls constantly during the night shift to check on patients, occasionally move to different units, attend or not attend various types of meetings, or refrain from bringing reading materials to work. It is clear from the record before the Court that these were obligations that were well within Plaintiffs' job description. An employer does not create a hostile work environment by requiring its employees to perform the work for which they

---

[2] The Court is mindful that while the instant matter is a motion for summary judgment, *Elmahdi* was appealed from a judgment as a matter of law and *Johnson* was appealed from a bench trial. Although the Court is comparing the facts found in *Elmahdi* and *Johnson* with the facts of the instant matter, the Court is reviewing the instant facts in the light most favorable to Plaintiffs because this is a motion for summary judgment.

were hired. Defendants' Motion for Summary Judgment is **GRANTED** with regard to Plaintiffs' hostile work environment claims.

### 2. Constructive Discharge Claims

"To prove a case of constructive discharge, a plaintiff must show (1) a reasonable person in his situation would find the working conditions intolerable, and (2) the employer intended to force him to quit. A plaintiff may meet the second element by showing his resignation was a reasonably foreseeable consequence of his employer's discriminatory actions." *Carpenter v. Con-Way Cent. Express, Inc.*, 481 F.3d 611, 616-17 (8th Cir. 2007) (internal citations, quotation marks, and alterations omitted). However, an employee must give his employer a reasonable opportunity to correct the intolerable condition before he resigns. *Anda v. Wickes Furniture Co., Inc.*, 517 F.3d 526, 534 (8th Cir. 2008).

The United States Supreme Court has explained that when a constructive discharge claim "stems from, and can be regarded as an aggravated case of" facts that are also alleged to constitute a hostile work environment, the bar for proving the constructive discharge is even higher than that for proving the hostile work environment. *See Penn. State Police v. Suders*, 542 U.S. 129, 146-47 (2004). This is because while a hostile work environment merely requires that "the offending behavior . . . be sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment . . . [a] hostile-environment constructive discharge claim entails something more: A plaintiff . . . must show working conditions so intolerable that a reasonable person would have felt compelled to resign." *Id.* (internal citation and quotation marks omitted). Here, the Court has already found Plaintiffs' allegations insufficient to establish a hostile work environment. Plaintiffs' constructive discharge

claim arises out of the same set of allegations.³ Therefore, their constructive discharge claims fail. *See O'Brien v. Dept. of Agric.*, 532 F.3d 805, 811 (8th Cir. 2008) ("Peterson premises her constructive discharge claim on the same allegations we found insufficient to establish a hostile work environment. As such, her claim fails."). Defendants' Motion for Summary Judgment is **GRANTED** with regard to Plaintiffs' constructive discharge claims.

### 3. Race Discrimination and Retaliation Claims

Each Plaintiff in this case filed two EEOC charges: one each on February 7, 2012, and one each on July 2, 2013. The EEOC issued dismissals of the first charges on September 24, 2012. Plaintiffs failed to file this lawsuit within ninety days of the EEOC's dismissal of their first charges as required by Title VII or within one year as required by the Arkansas Civil Rights Act. *See* 42 U.S.C. § 2000e-16(c); Ark. Code Ann. § 16-123-107(c)(3). Therefore, any claims Plaintiffs may have arising from the events described in the first EEOC charges are barred by the statute of limitations. It is true that in a hostile work environment case the Court may consider instances of discrimination that are alleged to have occurred outside the limitations period, *Kimzey v. Wal-Mart Stores, Inc.*, 107 F.3d 568, 572-73 (8th Cir. 1997), but this Court has already held, *supra*, that Plaintiffs were not subjected to a hostile work environment at Vantage Point.

However, Plaintiffs *did* file this lawsuit within ninety days of the EEOC's dismissal of their second set of charges, in which they complained that they were instructed to continuously walk the halls during their shift to check on patients, and that they were

---

³ Although Plaintiffs have also brought stand-alone claims of race discrimination and retaliation, those claims are not premised on any factual allegations that are not already encompassed within their hostile work environment claims.

11

threatened that they would be written up if they failed to do so. Hawkins alleged that this constituted race discrimination and retaliation for having filed a previous EEOC charge. Blackmon alleged that this constituted retaliation for having filed a previous EEOC charge, but did not allege that this constituted race discrimination.

Race discrimination and retaliation claims of this nature are both analyzed under the burden-shifting *McDonnell Douglas* framework, under which Plaintiffs must first make out a prima facie case of discrimination or retaliation in order to survive summary judgment. *Clegg v. Ark. Dept. of Corr.*, 496 F.3d 922, 926, 928 (8th Cir. 2007). If a prima facie case is established, then Defendants may rebut it by showing that there was a legitimate, nondiscriminatory or nonretaliatory reason for the complained-of action. *Id.* Finally, the burden shifts back to Plaintiffs to show that the legitimate reason proffered by Defendants is pretextual. *Id.*

To establish a prima facie case of discrimination, a party must show that "(1) [he] is a member of a protected class; (2) [he] was qualified for [his] position and performed [his] duties adequately; and (3) [he] suffered an adverse employment action under circumstances that would permit the court to infer that unlawful discrimination had been at work." *Habib v. NationsBank*, 279 F.3d 563, 566 (8th Cir. 2001). Similarly, to establish a prima facie case of retaliation, a party must show that "(1) he engaged in statutorily protected conduct; (2) there was an adverse employment action; and (3) a causal connection exists between his conduct and the adverse action." *Sallis*, 408 F.3d at 477. Here, Plaintiffs cannot establish a prima facie case of either race discrimination or retaliation with regard to the events complained of in their July 2013 EEOC charges.

First, the events complained of in Plaintiffs' July 2013 EEOC charges do not constitute an "adverse action" for purposes of this analysis. "An adverse employment action means a material employment disadvantage, such as a change in salary, benefits, or responsibilities. Mere inconvenience without any decrease in title, salary, or benefits is insufficient to show an adverse employment action." *Sallis*, 408 F.3d at 476 (internal quotation marks and citations omitted). Here, Vantage Point's instructions to Plaintiffs that they should walk the halls and check on patients at least every fifteen minutes were consistent with the normal duties and expectations of a psych tech at Vantage Point. Additionally, although Plaintiffs were *threatened* to be written up if they failed to continuously walk the halls, they in fact were not written up for their refusal to do so. Neither their titles, salaries, benefits, nor job descriptions were changed by the actions of Vantage Point that were set out in their July 2013 EEOC charges.

Furthermore, with regard to their retaliation claims, even if these instructions constituted an adverse action Plaintiffs would still be unable to demonstrate a causal nexus between their protected conduct (filing of their initial EEOC charges) and the adverse act. Plaintiffs were instructed to walk the halls and check up on patients a full year and five months after they filed their initial EEOC charges. These events are far too temporally remote for any causal nexus to be inferred in the absence of some other, much more substantial evidence of retaliatory intent, which is absent from the record here. *See, e.g., Burkhart v. Am. Railcar Indus., Inc.*, 603 F.3d 472, 477 (8th Cir. 2010) (seven months too remote); *Littleton v. Pilot Travel Ctrs., LLC*, 568 F.3d 641, 645 (8th Cir. 2009) (six months too remote); *Shanklin v. Fitzgerald*, 397 F.3d 596, 604 (8th Cir. 2005) (ten months

too remote). Defendants' Motion for Summary Judgment is **GRANTED** with regard to Plaintiffs' race discrimination and retaliation claims.

## IV. CONCLUSION

Plaintiffs' Motion for Leave to File Amended Complaint (Doc. 23) and Plaintiffs' Motion for Leave to File Amended Statement of Facts (Doc. 27) are **DENIED**. Defendants' Motion for Summary Judgment (Doc. 17) is **GRANTED**. The Complaint is **DISMISSED WITH PREJUDICE**, and judgment in Defendants' favor will be entered contemporaneously with this Order. Plaintiffs' Motion in Limine (Doc. 34), Defendants' Motion in Limine (Doc. 32), Defendants' Motion for Twelve Person Jury (Doc. 38), and Defendants' Motion to Take Deposition from Delores Franklin (Doc. 40) are **DENIED AS MOOT**.

**IT IS SO ORDERED** this 2nd day of December, 2014.

/s/ Timothy L. Brooks
TIMOTHY L. BROOKS
UNITED STATES DISTRICT JUDGE